FILED

2016 Jul-25  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES & SUZIE HALL,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| **v.** ] | **CASE NO.: 2:14-cv-01893-KOB** |
| ] | |
| **NATIONSTAR MORTGAGE LLC, et** ] | |
| **al.,** ] | |
| ] | |
| **Defendants.** ] | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the Joint Motion for Summary Judgment of Defendants Nationstar Mortgage and U.S. Bank National Association as Trustee. (Doc. 22).

This case centers on Plaintiffs Charles and Suzie Hall's allegations that the Defendants have failed to honor the Halls' loan modification agreement. The Halls contend that they had a binding loan modification agreement with their previous loan servicer, First Franklin Corp., which Nationstar, the Plaintiffs' current loan servicer, has refused to honor. The Halls also allege that the Defendants have misrepresented the amount of the Halls' debt and have failed to adequately respond to the Halls' requests for additional information about their account.

The Halls have asserted claims against the Defendants for violation of the Fair Debt Collection Practices Act; violation of the Real Estate Settlement Procedures Act; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Promissory Estoppel; Fraudulent Concealment; and Unjust Enrichment. Defendants Nationstar Mortgage and U.S. Bank as Trustee have moved for summary judgment on each of these claims.

For the reasons stated in this Memorandum Opinion, the court will GRANT the Defendants' Motion for Summary Judgment IN PART and will DENY it IN PART. Specifically,

the court will GRANT the Defendants' Motion as to all of the Halls' claims against Defendant U.S. Bank; will GRANT the Defendants' Motion as to Counts III-VII of the Halls' Complaint against Defendant Nationstar; and will DENY the Defendants' Motion as to Counts I and II of the Halls' Complaint against Defendant Nationstar.

## I.     Legal Standard

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden shifts to the non-moving party to produce sufficient favorable evidence "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

In ruling on a motion for summary judgment, the court should view all evidence and

inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The evidence of the non-moving party "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted). This standard exists because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255).

After both parties have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## II.    Procedural History

On October 6, 2014, Plaintiffs Charles and Suzie Hall brought this action against Defendants Nationstar Mortgage, LLC and U.S. Bank National Association as Trustee. The Halls asserted claims for violation of the Fair Debt Collection Practices Act; violation of the Real Estate Settlement Procedures Act ("RESPA"); Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Promissory Estoppel; Fraudulent Concealment; and Unjust Enrichment.

From August 20, 2015 to October 30, 2015, the court suspended the deadlines in this case to allow the Halls to submit a loan modification application and supporting documents to Nationstar. However, Nationstar was ultimately unable to approve the Halls for a modification, and the court set new deadlines to move the case forward.

3

On January 8, 2016, Defendants Nationstar and U.S. Bank filed the Motion for Summary Judgment that is the subject of this Opinion. That Motion has been fully briefed.

### III.   Statement of Facts [1]

In July of 2007, the Halls purchased a home. To finance the home, the Halls executed a promissory note and mortgage and borrowed $550,000 from First Franklin Financial Corp. The note indicates that the Halls' monthly payments would be in the amount of $4,806.33. U.S. Bank National Association, as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-5 is the owner and holder of the Halls' note and mortgage.

The Halls submitted the monthly mortgage payments due to First Franklin for the first two years of the agreement, but then began experiencing financial difficulties and began missing payments.

On September 21, 2010, First Franklin approved the Halls for a permanent loan modification under the Home Affordable Modification Program ("HAMP"). First Franklin sent the Halls a letter indicating that, to accept the modification offer, the Halls should return signed copies of the agreement to First Franklin by October 1, 2010. The agreement indicated that under the modification, the Halls' new principal balance would be $564,324.38 and that their new monthly payments would be $4,735.80.

------

[1] In their brief, the Plaintiffs failed to respond to the Defendants' Statement of Undisputed Facts. Therefore, the Defendants' facts are deemed admitted for the purposes of summary judgment, as set out in the court's requirements for summary judgment briefs in Appendix II, available at www.alnd.uscourts.gov under the court information for Judge Bowdre.

Additionally, in Plaintiffs' Statement of Facts, some of the citations do not correspond to the facts that are being asserted. Other facts are supported only with a citation to a paragraph in the Plaintiffs' Complaint. Allegations in a Complaint are not evidence, and the court has not considered any of Plaintiffs' proffered facts that are not supported by evidence.

Additionally, the agreement stated that the Halls' loan would "not be modified unless and until [they] receive[d] from the Lender a copy of this Agreement signed by the Lender." (Doc. 24-5, at 6). The agreement further provided that if the Halls needed to make any corrections to the agreement, a corrected agreement would be provided to them and that the current agreement would be void and of no legal effect.

Mrs. Hall testified that she returned of a signed copy of the First Franklin modification. She was not, however, able to produce a copy of the signed version of the document. She also did not receive a signed copy back from First Franklin. Mrs. Hall further testified that before returning the modification agreement, she made handwritten alterations to the principal balance in the agreement because she believed it was incorrect.

On October 1, 2010, servicing of the Hall's note and mortgage was transferred from First Franklin to BAC Home Loans Servicing. On July 1, 2011, servicing of the note and mortgage was transferred from BAC, a subsidiary of Bank of America, to Bank of America, the parent company. Bank of America offered the Halls a trial period modification, which the Halls rejected. (*See* Doc. 24-8 (March 31, 2012 letter from Bank of America to the Halls stating that the Halls were not being considered for a modification "because after being offered a Trial Period Plan or modification, [the Halls] notified [Bank of America] that [they] did not wish to accept the offer.")). The Halls' monthly payments under this trial period modification were to be $4,649.96.

Between August 2010 and September 2011, the Halls sent, and their loan servicers accepted, monthly payments in the amount of $4,649.96. The August and September 2010 payments were autodrafted from the Halls' checking account by First Franklin, while the October to September 2011 payments were made by check written to Bank of America Home Loan.

On July 1, 2013, servicing of the note and mortgage was transferred again from Bank of

America to Nationstar. On July 12, 2013, Nationstar sent the Halls a letter informing them that the servicing rights to their note and mortgage had been transferred to it. In this letter, Nationstar provided the Halls with a breakdown of the debt owed at that time.

Nationstar offered the Halls a trial period modification on October 15, 2013. This modification agreement indicated that the Halls' new principal balance would be $693,581.62 and that their new monthly payments would be $4,595.24. The Halls rejected the Nationstar trial modification. Mrs. Hall explained that she thought the principal balance shown in the Nationstar modification was too high.

In her deposition, Mrs. Hall admitted that when she called and asked questions regarding her loan modification, she called and spoke to representatives at First Franklin and Bank of America, not Nationstar. Mrs. Hall testified that the only personal communication she had with Nationstar was in response to Nationstar's 2013 modification offer. Mrs. Hall further admitted that the alleged misrepresentations that she mentioned in her Complaint were made by Bank of America, not Nationstar. Mrs. Hall stated that the only alleged misrepresentation she could attribute to Nationstar was that Nationstar offered the Halls a modification, but then later "reneged" on it. However, Mrs. Hall acknowledged that she did not complete or return the Nationstar modification paperwork.

In her deposition, Mrs. Hall also stated that as far as she was concerned, all of her loan servicers -- Nationstar, Bank of America, and First Franklin -- were the same company. Nationstar, however, is not a subsidiary, agent, or business entity related in any way to First Franklin or Bank of America.

On October 28, 2013 and November 5, 2013, counsel for the Halls sent Nationstar letters

purporting to be qualified written requests ("QWRs")[2] under RESPA. On November 12, 2013, Nationstar sent a letter to the Halls' counsel acknowledging receipt of the QWR. On November 15, 2013, Nationstar followed up with a substantive response with details about the Halls' loan.

On February 14, 2014 and April 14, 2014, counsel for the Halls sent Nationstar letters purporting to be notices of error ("NOEs")[3] under Regulation X of RESPA. In these letters, the Halls' counsel explained that the Halls believed that Nationstar had failed to provide them with accurate and complete information as to the loss mitigation options available to them. On April 18, 2014, Nationstar sent a letter to the Halls' counsel acknowledging receipt of the NOE. On May 2, 2014, Nationstar followed up with a substantive response about the modifications that had been offered to the Halls.

On July 23, 2014, counsel for the Halls sent Nationstar a letter purporting to be a debt verification request under the FDCPA.[4] Nationstar responded to the debt verification request on August 8, 2014, and then followed up with a more substantive response on August 20, 2014.

---

[2] A "qualified written request" is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . includes, or otherwise enables the servicer to identify, the name and account of the borrower, and . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

[3] A "notice of error" is "any written notice from the borrower that asserts an error and includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35.

[4] Under the FDCPA, 15 U.S.C. § 1692g(b), if a consumer notifies the debt collector in writing within thirty days of an initial notice of debt that he disputes his debt, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

As of February 2016, a billing statement from Nationstar indicates that the Halls' regular monthly payment amount is currently $5,460.76 and that the Halls owe $333,175.99 in overdue payments.

## IV.    Discussion

### A.    Claims Against Defendant U.S. Bank as Trustee

The Halls brought this action against Defendant Nationstar, the current servicer of their loan, and Defendant U.S. Bank, as Trustee of their loan.

Count I of the Halls' Complaint explicitly refers to Defendant Nationstar only. It does not mention Defendant U.S. Bank. Accordingly, the court interprets Count I of the Halls' Complaint to apply only to Defendant Nationstar.

 To which Defendant(s) the remaining Counts apply is less clear. In Counts II-VII, the Halls assert claims against the "Defendant," without indicating whether they are referring to Defendant Nationstar, Defendant U.S. Bank, or both. The Halls do not refer to either Defendant by name in Counts II-VII.

The factual allegations and the context of the claims do not help to clarify which claims apply to U.S. Bank. All of the Halls' factual allegations relate only to Defendant Nationstar, or to previous servicers, who are not parties to this action. In the Halls' Complaint, Defendant U.S. Bank is mentioned only in the case style and in the introduction of the parties. The Halls have pled no factual allegations that relate to Defendant U.S. Bank. The Halls have also asserted no theory of liability as to Defendant U.S. Bank in any of their Counts.

Now, at the summary judgment stage, the Halls have likewise failed to offer any evidence relating to Defendant U.S. Bank's actions.

Accordingly, the court finds that the Halls' allegations and evidentiary submissions are

8

insufficient to create a genuine issue of material fact as to any of the claims they have asserted against U.S. Bank. Consequently, the court will GRANT the Defendants' Motion for Summary Judgment as to the claims asserted against Defendant U.S. Bank and will DISMISS all claims against Defendant U.S. Bank.

      B.     <u>Claims Against Defendant Nationstar</u>

Next, the court will address the extent to which genuine issues of material fact exist as to the Halls' claims against Defendant Nationstar, the servicer of their loan.

      1.     Count I - Fair Debt Collection Practices Act Violation

In Count I of their Complaint, the Halls allege that Nationstar violated several sections of the FDCPA. The Halls contend that Nationstar violated 15 U.S.C. § 1692f "by using unfair and unconscionable means to collect the debt owed by the Halls;" § 1692e(2) "by misrepresenting the character, amount and legal status of the Plaintiff's debt;" §§ 1692e(5) and 1692f(6) "by threatening to foreclose on the Halls' home even though Defendant Nationstar has no present right to possession of the property under its security agreement;" and § 1692g(a)(1) "by failing to accurately and fully state in communication to the Halls 'the amount of the debt'." (Doc. 1, ¶¶ 80-82).

The court finds that genuine issues of material fact exist as to whether Defendant Nationstar complied with these provisions of the FDCPA. In her deposition, Mrs. Hall testified that the amount of the principal balance shown in the Nationstar modification offer was inflated. Mrs. Hall stated that Nationstar represented her balance to be "six hundred and something thousand," while she believed her balance should have been $550,000. (Doc. 24-21, 48:7-18). Mrs. Hall explained that her initial balance was $550,000, but that she had made some payments before the modification, which she believed would have brought her balance to roughly

$535,000. Mrs. Hall acknowledged that she would likely incur some penalties and interest for her missed payments, but said that she thought these penalties would take her balance back up to about $550,000, not the $693,581.62 that Nationstar represented her balance to be. (*Id.*, 48:23-49:10).

On July 23, 2014, counsel for the Halls sent Nationstar a letter requesting verification of the Halls' debt, pursuant to the FDCPA. Nationstar responded to this letter on August 8, 2014, and then followed up with a more substantive response on August 20, 2014. The August 20 letter says that it contains, as enclosures, a copy of the Plaintiffs' complete Payment History, as well as several other documents, including Plaintiffs' most recent billing statement, Plaintiffs' servicing transfer notices, and Plaintiffs' payoff quote. These enclosures, however, were not included in the evidence Defendants offered to the court.

Nationstar contends that it complied with all of the provisions of the FDCPA. However, without the enclosures sent to the Plaintiffs, the court is unable to verify whether Nationstar did in fact provide the Plaintiffs with a complete payment history and the other documents referenced in its letter, in satisfaction of the FDCPA. The court is also unable to confirm whether the amount of the debt that Nationstar claims it is owed matches the records in the Plaintiffs' payment history.

Consequently, Mrs. Hall's deposition testimony creates a genuine issue of material fact as to whether Nationstar complied with the provisions of the FDCPA. *See, e.g., Feliciano v. City of Miami Beach,* 707 F.3d 1244, 1253 (11th Cir. 2013) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."); *Price*

*v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.") (citations omitted). Because no evidence in the record blatantly contradicts Mrs. Halls' deposition testimony, the court may not discount it.

Accordingly, the court will DENY the Defendants' Motion for Summary Judgment as to the Halls' FDCPA claim against Defendant Nationstar.

2.      Count II - Real Estate Settlement Procedures Act

Next, in Count II of their Complaint, the Halls allege that, on multiple occasions, they, through counsel, sent Nationstar "qualified written requests," as defined in RESPA, 12 U.S.C. § 2605(e)(1)(B), and that Nationstar failed to adequately respond to these QWRs.

The Halls specifically allege that Nationstar violated RESPA, 12 U.S.C. § 2605(e)(2)(A) "by failing to make appropriate correction to the Plaintiff's account in response to the qualified written request;" § 2605(e)(2)(C) "by failing to provide the Plaintiff with the information and documentation requested;" § 2605(e)(2) "by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's qualified written request;" and § 2605(e)(3) "by providing information to consumer credit reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to the qualified written request."

As discussed previously, Mrs. Hall testified in her deposition that the amount of the principal balance shown in the Nationstar modification offer was inflated.

Based on this belief that the balance shown was too high, counsel for the Halls sent Nationstar letters purporting to be QWRs on October 28, 2013 and November 5, 2013. Nationstar responded to the Halls on November 12, 2013, and November 15, 2013. In its November 15 letter, Nationstar indicated that it was enclosing a number of documents, including

11

a copy of the Halls' payment history. However, these enclosures were not presented to the court as evidence.

On February 14, 2014 and April 14, 2014, counsel for the Halls sent Nationstar letters purporting to be NOEs under Regulation X of RESPA. Nationstar responded to the Halls on April 18, 2014 and May 2, 2014. In its May 2 letter, Nationstar indicated that it was enclosing documents such as the Nationstar servicing transfer notice, the 2013 proposed Nationstar modification agreement, and the 2014 modification denial letter. Again, these enclosures were not provided to the court as evidence.

Without these enclosures, the court is unable to assess whether Nationstar did in fact provide complete responses that complied with the provisions of RESPA. The court is also unable to determine whether the amount of the Halls' principal balance and total debt, as represented by Nationstar, was supported by Nationstar's records and the Halls' payment history, or whether Nationstar should have made a correction to the Plaintiffs' account, as required by RESPA.

Accordingly, the court finds that genuine issues of material fact exist regarding whether Defendant Nationstar complied with the provisions of RESPA. Therefore, the court will DENY the Defendants' Motion for Summary Judgment as to the Halls' RESPA claim against Nationstar.[5]

_____

[5] As discussed above, the court finds that the Halls have not presented evidence sufficient to create a genuine issue of material fact as to their claims against Defendant U.S. Bank. However, even if the Halls had presented some evidence related to Defendant U.S. Bank, their RESPA claim against U.S. Bank would fail as a matter of law because RESPA only places obligations on the *servicer* to respond to QWRs. *See* 12 U.S.C. § 2605(e)(1)(A); *see also Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 881 (E.D. Va. 2012). The Halls have not alleged that U.S. Bank serviced their loan.

3.      Count III - Breach of Contract

In Count III of their Complaint, the Halls assert that Nationstar breached its contract with the Halls by failing to provide them with the loan modification to which they claim they are entitled.

Under Alabama law, the elements of a breach of contract claim are: "'(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). A valid contract requires: "'an offer and acceptance, consideration, and mutual assent to the terms essential to the formation of a contract.'" *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997) (quoting *Strength v. Ala. Dep't of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993)).

In this case, the Halls' breach of contract allegations are premised on Nationstar's failure to honor the modification *First Franklin* offered to the Halls. However, this claim fails because the Halls are unable to demonstrate that the First Franklin modification became a valid, binding contract.

Mrs. Hall testified that, upon receiving the First Franklin modification documents, she signed and returned the documents to First Franklin. Nationstar has no record of First Franklin receiving a signed copy of the documents from Mrs. Hall, and Mrs. Hall is likewise unable to produce a signed copy of the agreement.

However, even if the court takes Mrs. Hall's assertion that she signed and returned the agreement as true, the Halls have failed to demonstrate that the First Franklin modification agreement was a valid, binding contract because they have failed to show that a condition

13

precedent in the First Franklin agreement was met.  The First Franklin modification agreement

stated that the Halls' loan would "not be modified unless and until [they] receive[d] from the

Lender a copy of this Agreement signed by the Lender." (Doc. 24-5, at 6). The Halls did not

receive a copy of the modification signed by First Franklin. Because the Halls did not receive a

copy of the modification signed by First Franklin, this condition precedent was not met, and a

valid contract was not formed. *See, e.g., Ex parte Payne*, 741 So. 2d 398, 403 (Ala. 1999) ("In

negotiating a contract the parties may impose any condition precedent, the performance of which

is essential before they become bound by the agreement; in other words, there may be a condition

precedent to the existence of a contract.") (citations omitted).

Additionally, the First Franklin modification did not become a valid, enforceable contract

because Mrs. Hall admitted that she made handwritten alterations to the modification agreement.

Alabama law provides that "[o]ne party cannot unilaterally alter the terms of a contract . . . . Both

parties must mutually assent to a modification." *Ex parte Amoco Fabrics & Fiber Co.*, 729 So.

2d 336, 340 (Ala. 1998) (citations omitted). Because Mrs. Hall altered the principal balance

contained in the modification agreement, no mutual assent existed, and the agreement did not

become a binding contract.

The First Franklin modification agreement also fails to satisfy the statute of frauds.

Alabama law provides that "[e]very agreement or commitment to lend money, delay or forebear

repayment thereof or to modify the provisions of such an agreement or commitment" must be in

writing and signed by the party against whom enforcement is sought. Ala. Code § 8-9-2(7).

Alabama courts have specifically held that loan modification agreements are subject to the statute

of frauds. *See, e.g., Coleman v. BAC Serv.*, 104 So. 3d 195, 207 (Ala. Civ. App. 2012); *see also*

*Manker v. Citimortgage, Inc.*, No. 2:10-CV-1012-WKW[WO], 2012 WL 999611, at *5 (M.D. Ala. March 23, 2012) (finding that "[t]he lack of signatures on the purported contracts is fatal to Plaintiffs' breach of contract claim"). Because the Halls have not provided any evidence that the contract was signed by First Franklin, the contract is void and unenforceable under the statute of frauds.

The Halls contend that the doctrine of partial performance applies as an exception to the statute of frauds because they made payments in accordance with the First Franklin modification offer. However, the partial performance doctrine applies only to oral agreements for the sale of land. *See, e.g., Branch Banking & Trust Co. v. EBR Investments LLC*, No. 2:14-CV-01578-WMA, 2015 WL 225457, at *2 (N.D. Ala. Jan. 16, 2015) ("Although Alabama courts have long recognized a 'part performance' exception to the statue of frauds under Ala. Code § 8-9-2(5) for oral agreements to buy or sell land, *Darby v. Johnson*, 477 So. 2d 322, 326 (Ala.1985), Alabama courts have declined to expand the exception beyond subsection (5). *Mantiply v. Mantiply*, 951 So. 2d 638, 652–53 (Ala.2006)."). The Halls have cited, and the court knows of, no authority to the contrary. Accordingly, the partial performance exception to the statute of frauds does not save the Halls' breach of contract claim.

Because the Halls cannot show that the First Franklin modification was a valid, enforceable contract, which complies with the statute of frauds, their breach of contract claim fails. Therefore, the court will GRANT the Defendants' Motion for Summary Judgment as to Count III of the Halls' Complaint.

      4.     Count IV - Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count IV of their Complaint, the Halls allege that Nationstar breached the implied covenant of good faith and fair dealing.

The court finds that this claim fails as a matter of law because Alabama law does not recognize a cause of action for breach of good faith and fair dealing in the context of a dispute regarding a mortgage loan. *See, e.g.*, *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1368 (S.D. Ala. 2013) ("Defendant is correct that Alabama has refused to recognize a tort claim for breach of the duty of good faith outside the insurance context.") (citing *Lake Martin/Ala. Power Licensee Ass'n, Inc. v. Ala. Power Co.*, 601 So. 2d 942, 944 (Ala. 1992)); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1287 (N.D. Ala. 2013) ("Because the contract at issue is not an insurance contract, Plaintiff's breach of implied covenant of good faith and fair dealing claim fails as a matter of law . . . ."); *Grant v. Butler*, 590 So. 2d 254, 256 (Ala. 1991) ("Although every contract contains either an express or an implied covenant that the parties will act in good faith in performing the contract, in Alabama only insurance contracts give rise to a duty imposed by law on which a tort claim for bad faith performance can be based.").

Accordingly, the court will GRANT the Defendants' Motion for Summary Judgment as to Count IV of the Halls' Complaint.

      5.     Count V - Promissory Estoppel

The Halls next assert a claim against Nationstar for promissory estoppel. The Halls allege that the "Defendant intentionally represented that Plaintiffs could obtain loan modifications, and that Plaintiffs could make modified, reduced payments that would satisfy existing loan

obligations for the terms set forth in the loan modification agreements, if they followed the requirements specified in Defendant's offer." (Doc. 1, ¶ 109).

In Alabama, to state a claim for promissory estoppel, a plaintiff must show: "(1) that the defendant made a promise (2) that the defendant should have reasonably expected to induce action or forbearance of definite and substantial character; (3) the promise did, in fact, induce action or forbearance; (4) and injustice can be avoided only by enforcing the promise." *Sykes v. Payton*, 441 F. Supp. 2d 1220, 1224 (M.D. Ala 2006) (citing *Bush v. Bush*, 177 So. 2d 568, 570 (Ala. 1964)).

The Halls fail to offer evidence sufficient to create a genuine issue of material fact as to the first element of their claim. The Halls have failed to show that Nationstar made them a promise.

In their Complaint, the Halls assert that the *"Defendant"* made representations to them regarding their loan modification, without specifying which defendant made those representations or when those representations were made. Accordingly, the court is unclear as to what the Halls intended to assert as the basis for their promissory estoppel claim against Nationstar.

However, the Halls' pleading deficiencies aside, in reviewing the evidence before it, the court can find the existence of no promise by Nationstar that would support a claim for promissory estoppel.

Nationstar's 2013 modification offer was not a promise. It was an offer that was rejected by the Halls. Accordingly, that offer cannot serve as the basis for the Halls' promissory estoppel claim.

First Franklin's modification was also not a promise. As discussed above, the First Franklin modification offer was never fully executed and did not become a binding contract. No evidence exists to suggest that First Franklin or Nationstar promised to carry out the loan modification agreement as modified by the Halls or promised to unilaterally modify the loan agreement. The Halls have not identified any other promises made by First Franklin that would support a claim for promissory estoppel.

Additionally, Nationstar's alleged statements or promises to accept reduced payments from the Halls would be void under the statute of frauds. Under Alabama law, Plaintiffs may not circumvent the statute of frauds by asserting their reliance on unsigned or unwritten statements in a promissory estoppel claim. *See, e.g., Bruce v. Cole*, 854 So. 2d 47, 58 (Ala. 2003) ("[A]n oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud."); *Durham v. Harbin*, 530 So. 2d 208, 213 (Ala. 1988) ("Although allowing a plaintiff's reliance on nonfraudulent representations to abrogate the Statute of Frauds is a widespread phenomenon . . . Alabama has rejected this approach to date.").

Accordingly, the Halls' claim for promissory estoppel fails because the Halls have not offered any evidence to show that a promise to accept reduced payments existed and because any such promise to modify the Halls' loan would be void and unenforceable under Alabama's statute of frauds. Therefore, the court will GRANT the Defendants' Motion for Summary Judgment as to Count V of the Halls' Complaint.

6.   Count VI - Fraudulent Concealment

In Count VI of their Complaint, the Halls allege that the Defendant committed fraud "by promising [the Halls] opportunities for loan modifications when they had no intention of

18

providing such permanent modifications." (Doc. 1, ¶ 114).

The Halls' fraud claim falls short of the heightened pleading standard for fraud in Rule 9(b) of the Federal Rules of Civil Procedure, which states that, "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (emphasis added).

When pleading a fraud claim, to satisfy the requirements of Rule 9(b), "a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff; and (4) what the defendants gained by the alleged fraud.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

The Halls have failed to satisfy these requirements. The Halls have brought their fraud claim against the "Defendant," without specifying to which Defendant they are referring -- be it Nationstar, U.S. Bank, or one of the previous loan servicers who are not parties to this suit. The Halls have also failed to state in specific terms what statements or omissions they contend were fraudulent. In their Complaint, the Halls simply allege that the "Defendant used fraud and artifice to induce Plaintiffs to enter and keep Plaintiffs in default" and that the "Defendant did not disclose to Plaintiffs its motives." (Doc. 1, ¶¶ 115, 117). These general allegations are insufficient to sustain a claim for fraud.

Moreover, now, at the summary judgment stage, the Halls have presented no evidence of specific statements or omissions by Nationstar or U.S. Bank that would support a fraud claim. In her deposition, Mrs. Hall admitted that any alleged misrepresentations referenced in her

19

Complaint were made by Bank of America, not Nationstar. Mrs. Hall testified that the only alleged misrepresentation or concealment she could attribute to Nationstar was that Nationstar offered the Halls a loan modification and then later reneged on it. However, Mrs. Hall acknowledged that the real reason the Nationstar trial modification was not implemented was that the Halls had refused to accept the offer and did not sign and return the documents. Nationstar's retraction of a rejected offer does not constitute fraud.

Accordingly, the court finds that the Halls have failed to offer evidence sufficient to create a genuine issue of material fact as to their fraudulent concealment claim. The court will, therefore, GRANT the Defendants' Motion for Summary Judgment as to Count VI of the Halls' Complaint.

### 7.    Count VII - Unjust Enrichment

Finally, in Count VII of their Complaint, the Halls allege that the "Defendant was unjustly enriched at the expense of each of the Plaintiffs." (Doc. 1, ¶ 126).

Under Alabama law, "[t]o prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, *in equity and good conscience*, belongs to the plaintiff or holds money which was improperly paid to the defendant because of *mistake or fraud*." *Scrushy v. Tucker*, 955 So. 2d 988, 1011 (Ala. 2006) (internal quotations and citations omitted) (emphasis in original).

The Halls premise their unjust enrichment claim on the First Franklin modification. The Halls contend that Nationstar was unjustly enriched because it prevented the Halls "from making reduced monthly payments and by failing to honor the First Franklin Modification and by failing to offer the Halls a permanent modification." (Doc. 26, at 42); *see also* (Doc. 1, ¶¶ 127-28).

20

As set out above, the Halls have neither demonstrated that the First Franklin entered into a binding modification agreement with the Halls, nor that First Franklin made a promise to accept reduced payments from the Halls. The Halls have also failed to show that Nationstar entered into a binding contract or made a promise to accept reduced payments from the Halls.

Accordingly, Nationstar was not obligated to allow the Halls to make reduced monthly payments. The Halls have asserted no other basis for an unjust enrichment claim.

Consequently, the court will GRANT Defendants' Motion for Summary Judgment as to Count VII of the Halls' Complaint.

**V.     Conclusion**

For the reasons stated in this Opinion, the court will GRANT the Defendants' Motion for Summary Judgment IN PART and will DENY it IN PART.

The court will GRANT the Defendants' Motion as to all claims against Defendant U.S. Bank.

The court will GRANT the Defendants' Motion as to Counts III-VII of the Halls' Complaint against Defendant Nationstar. The court will, however, DENY the Defendants' Motion as to Counts I and II of the Halls' Complaint against Defendant Nationstar because the court finds that genuine issues of material fact exist regarding whether Nationstar complied with the provisions of the FDCPA and RESPA.

The only claims remaining in this action will be the Halls' claims in Counts I and II of their Complaint, alleging violations of the FDCPA and RESPA by Defendant Nationstar.

The court will enter a separate Order along with this Opinion.

21

DONE and ORDERED this 25th day of July, 2016.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE